COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 JOEL THOMAS BOWEN 
 AKA J.T. BOWEN,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00129-CR
  
                          Appeal from
  
 Criminal District
 Court No. 1
  
 of Tarrant County,
 Texas
  
 (TC # 1189455D)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

            Joel Thomas Bowen appeals his
conviction of possession of more than four grams but less than 200 grams of
methamphetamine (Count II), enhanced by a prior felony conviction.  After finding Appellant guilty of Count II,
the jury found the enhancement paragraph true and assessed Appellant’s
punishment at imprisonment for fifteen years. 
We affirm.

FACTUAL SUMMARY

            In April 2009, Detective Dusty Smith
of the Hurst Police Department was assigned to the Tarrant Regional Auto Crimes
Task Force which investigates auto theft and auto-related crimes.  While investigating a motorcycle theft case,
Smith obtained and executed a search warrant for a residence located at 7048
Glen Hills in Tarrant County.  The
warrant did not list Appellant as the owner of the property but he was present
in the residence along with three females. 
Two of the females were in the living room and the third female was in a
back bedroom.  The officers found
Appellant’s personal property in the converted garage.  Smith testified without objection that he had
spoken with the homeowner, David Rouse, who told him that Appellant was living
at the residence.  The officers had also
seen Appellant’s Chevy truck parked in the driveway when they conducted
surveillance prior to executing the search warrant and they had found Appellant’s
personal property in the converted garage. 


            Detective Bryan Laurie is employed
by the Haltom City Police Department and assigned to the Tarrant County
Narcotics Unit.  Laurie participated in
the execution of the search warrant and briefly entered the bedrooms before moving
to the converted garage bedroom.  Laurie
estimated that only thirty-five to forty-five seconds had elapsed since he first
entered the house.  The bedroom contained
a couch, coffee table, dresser, closet with some clothing, desk, an end table
and lamp, and some moving boxes.  Other
detectives had already entered and Laurie saw Appellant, wearing only a pair of
red boxers, standing between the sofa and coffee table.  In a search of the moving boxes, Laurie found
a high school diploma and some mail bearing Appellant’s name.  The officers found methamphetamine on the
coffee table and scattered on the floor. 
It appeared to Detective Laurie that the methamphetamine had been
thrown.  A small baggie of
methamphetamine weighing a total of 7.34 grams was located on the coffee
table.  Inside a Cheez-It box on the
coffee table, the officers found small baggies and a digital scale.  A digital scale is commonly used for weighing
narcotics and the small baggies are used to package narcotics for sale on the
street.  Appellant’s wallet containing
his driver’s license was on the coffee table only inches away from the loose methamphetamine.  The room also contained a washing machine
which was not connected.  Beneath the
washer, the officers found a handgun inside an unlocked floor safe.  

            Appellant’s girlfriend, Libby
Franklin, testified that she and Appellant were in the process of moving in
together in April 2009.  Appellant had
been living on Gill Street in Blue Mound, Texas.  They dropped off Appellant’s truck at a house
located at 7048 Glen Hills.  She met
David Rouse and his girlfriend, Lisa, at the house that day.  Rouse was going to fix Appellant’s
truck.  Appellant also left his dog at
the house because he and Rouse intended to breed their dogs.  On April 17, 2009, she drove Appellant to the
house so he could pick up his truck and dog while she went to pick up her
daughter.  She did not see him again
until the following morning when she bonded him out of jail.  Franklin testified that some of Appellant’s
belongings were taken from the truck into the house.  

            Appellant testified that he knew
David Rouse because they had worked construction together.  Even though they no longer worked together,
they socialized.  Appellant denied ever
living with Rouse.  In April 2009,
Appellant called Rouse and asked him to work on his truck.  When Rouse learned that Appellant had a
bulldog, he told Appellant to bring his dog to meet Rouse’s dog and brought up
the idea of breeding them in the future. 
Appellant dropped off his truck and dog on Sunday, April 12, 2009.  Appellant went back the following day to give
Rouse $450 to buy parts and fix the truck. 
The following day, April 14, Appellant called Rouse and asked him to
move some of the boxes from the truck into the house where they would be
safer.  One of those boxes contained
Appellant’s diploma.  The boxes were in
Appellant’s truck because he was in the process of moving from Blue Mound to
Grapevine.  Rouse called Appellant on
Wednesday, April 15, and told him that his truck would be finished by the next
morning.  On Thursday afternoon, April
16, Lisa called and told Appellant that Rouse had been arrested.  She instructed him to pick up his truck.  Appellant went to the house the next evening
after work and talked to Lisa about what had happened to Rouse.  Appellant was dressed in a muscle shirt and
gym shorts.  He was in the kitchen
talking to Lisa when he heard a loud boom and suddenly men were in the house
yelling, “Get on the ground!”  Appellant
stayed on the floor until the officers stood him up and made him sit in the
living room.  They made him remove his
muscle shirt so they could look at his tattoos while asking him whether his
tattoos were gang-related.  The officers
handcuffed Appellant and made him sit on the couch for about thirty minutes
before moving him into the converted garage. 
Appellant told them that the methamphetamine was not his and he did not
know whose it was because he did not live there.  Appellant admitted being convicted of
resisting arrest and criminal mischief in 2002. 
In 2003, he was convicted of possession of methamphetamine with intent
to deliver.  He entered a plea of guilty
and was placed on community supervision. 
The court revoked his community supervision because Appellant left a
treatment center and failed to provide a urinalysis when requested.  Appellant had admitted at the time that his
drugs of choice were marihuana and methamphetamine and he was having problems
with methamphetamine.  The trial court
sentenced Appellant to serve a four year term of imprisonment and he was on
parole at the time of his arrest in this case. 


            The jury rejected Appellant’s
defense and found him guilty of possessing more than four grams but less than
200 grams of methamphetamine as charged in Count II of the indictment.  The jury found the enhancement paragraph true
based on Appellant’s plea of true and assessed his punishment at imprisonment
for a term of fifteen years.   

SUFFICIENCY OF THE EVIDENCE

            In his sole point of error,
Appellant challenges the sufficiency of the evidence to prove beyond a
reasonable doubt that he possessed methamphetamine.  More specifically, he contends that the
evidence shows nothing more than mere presence at the residence where the
methamphetamine was found.

Standard of Review and Applicable Law

In
reviewing the sufficiency of the evidence to determine whether the State proved
the elements of the offense beyond a reasonable doubt, we apply the Jackson v. Virginia standard. Brooks v. State, 323 S.W.3d 893, 895-95
(Tex.Crim.App. 2010), citing Jackson v.
Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  Under that standard, a reviewing court must
consider all evidence in the light most favorable to the verdict and in doing
so determine whether a rational justification exists for the jury’s finding of
guilt beyond a reasonable doubt. Brooks,
323 S.W.3d at 894-95, citing Jackson,
443 U.S. at 319, 99 S.Ct. at 2789.  As
the trier of fact, the jury is the sole judge as to the weight and credibility
of witness testimony, and therefore, on appeal we must give deference to the
jury’s determinations.  Brooks, 323 S.W.3d at 894–95. If the
record contains conflicting inferences, we must presume the jury resolved such
facts in favor of the verdict and defer to that resolution.  Id.  On appeal, we serve only to ensure the jury
reached a rational verdict, and we may not reevaluate the weight and
credibility of the evidence produced at trial and in so doing substitute our
judgment for that of the fact finder.  King v. State, 29 S.W.3d 556, 562
(Tex.Crim.App. 2000). In our review, we consider both direct and circumstantial
evidence and all reasonable inferences that may be drawn from the evidence. Hooper v. State, 214 S.W.3d 9, 13
(Tex.Crim.App. 2007).  The standard of
review as to the sufficiency of the evidence is the same for both direct and
circumstantial evidence cases.  Id.; Arzaga
v. State, 86 S.W.3d 767, 777 (Tex.App.--El Paso 2002, no pet.).  Each fact need not point directly and
independently to the guilt of the accused, so long as the cumulative force of
all the evidence, when coupled with reasonable inferences to be drawn from that
evidence, is sufficient to support the conviction.  Id.  Circumstantial evidence is as probative as
direct evidence in establishing the guilt of an actor, and circumstantial
evidence alone can be sufficient to establish guilt.  Guevara
v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004); Arzaga, 86 S.W.3d at 777.

The
Penal Code defines “possession” as actual care, custody, control, or
management. Tex.Penal Code Ann. §
1.07(a)(39)(West Supp. 2012).  To prove
unlawful possession of a controlled substance, the State must prove that (1)
the accused exercised control, management, or care over the substance; and (2)
the accused knew the matter possessed was contraband. Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); see Tex.Health
& Safety Code Ann. § 481.115(a)(West 2010).  Mere presence at a location where drugs are
found is insufficient, by itself, to establish actual care, custody, or control
of those drugs.  Evans v. State, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006).  When the accused is not in exclusive
possession of the place where the substance is found, it cannot be concluded
that the accused had knowledge of and control over the contraband unless there
are additional independent facts and circumstances which affirmatively link the
accused to the contraband.  Poindexter, 153 S.W.3d at 406.

A
nonexclusive list of factors that can be sufficient, either singly or in
combination, to establish someone's possession of contraband include:  (1) the defendant’s presence when a search is
conducted, (2) whether the contraband was in plain view, (3) the defendant’s
proximity to and the accessibility of the contraband, (4) whether he was under
the influence of a controlled substance or narcotic when arrested, (5) whether
he possessed other contraband when arrested, (6) whether he made incriminating
statements when arrested, (7) whether he attempted to flee, (8) whether he made
furtive gestures, (9) whether there was an odor of contraband, (10) whether
other contraband or drug paraphernalia were present, (11) whether he owned or
had the right to possess the place where the contraband was found, (12) whether
the contraband was found in an enclosed place, (13) whether he was found with a
large amount of cash, (14) whether his conduct indicated a consciousness of
guilt, (15) whether he made incriminating statements connecting himself to the
contraband, (16) the quantity of the contraband, and (17) whether he was
observed in a suspicious area under suspicious circumstances.  Evans,
202 S.W.3d at 162 n. 2; Lassaint v. State,
79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.).  These are simply some factors which may
circumstantially establish the legal sufficiency of the evidence to prove
knowing “possession.”  Evans, 202 S.W.3d at 162 n. 12.  They are not a litmus test.  Id.  It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, both direct
and circumstantial.  Evans, 202 S.W.3d at 162.

Review of the Evidence

            Appellant argues that the evidence
is insufficient because nothing links him to the house or the methamphetamine
and he was in the kitchen when the officers entered the house.  Appellant’s argument fails to review the
evidence in the light most favorable to the verdict.  When viewed in the proper light, the evidence
demonstrated the presence of affirmative link factors one, two, three, ten,
eleven, and fourteen.  Appellant was
present when the search warrant was executed (first factor) and there is at
least some evidence that officers found him in the converted garage near the
coffee table where loose and packaged methamphetamine and paraphernalia was in
plain view (factors two, three, and ten). 
Appellant testified that he did not go into the converted garage until
the officers took him in there approximately thirty minutes after they entered
the house.  Detective Laurie testified,
however, that he went into the converted garage only thirty-five to forty-five
seconds after entering the house and other officers were already in there with
Appellant.  Appellant’s claim he had not
gone into the converted garage prior to the officers taking him in there is
also contradicted by the presence of his wallet on the coffee table.  That wallet was found only inches from the loose
methamphetamine, a digital scale and small baggies.  Appellant also testified he had never lived
in the residence, but the homeowner, David Rouse, told the police that
Appellant was living at the house (factor eleven).  Rouse’s statement is supported by the
evidence showing that boxes containing Appellant’s personal property were in
the converted garage.  There is also
evidence that Appellant knew the substance he possessed was methamphetamine
because he admitted that he had used methamphetamine in the past.  See
Joseph v. State, 897 S.W.2d 374, 376 (Tex.Crim.App. 1995)(presence of drug
paraphernalia in home with contraband supported conclusion the defendant knew
he possessed cocaine).   Detective Laurie
testified that it appeared to him that someone had thrown some of the
methamphetamine from the coffee table onto the floor of the converted
garage.  This evidence indicates a
consciousness of guilt and permits an inference that Appellant exercised
control over the methamphetamine by attempting to scatter it in the seconds
after the police entered the house to execute the search warrant (factor
fourteen).  We conclude that the evidence
is legally sufficient to support the jury’s finding that Appellant knew the
substance on the coffee table was methamphetamine and he exercised control,
management, or care over it.  See Evans, 202 S.W.3d at 163-66 (in
possession of cocaine case, evidence was sufficient to show that the defendant
exercised care, control, or management of cocaine discovered on coffee table in
house where his aunt lived even though aunt told police officers that cocaine
was hers, and defendant offered reasonable alternative hypothesis that he was
merely checking on aunt while his grandmother was away; defendant was sitting
directly in front of 14 grams of cocaine on coffee table, cocaine was within
arm’s reach and was in plain view, and defendant was alone in house, knew that
“[d]rugs” were why officers had entered house, and received mail at house).  Issue
One is overruled.  The judgment of the
trial court is affirmed.




 

 

October 17, 2012                                _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)